

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-11-2008

# USA v. Blake

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1982

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Blake" (2008). *2008 Decisions.* Paper 687.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/687

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1982
_____

UNITED STATES OF AMERICA

v.

ZACHEAUS BLAKE,

Appellant

_____

On Appeal from the District Court of the Virgin Islands
(No. 06-cr-00047)
District Judge: Honorable Raymond L. Finch

Argued May 8, 2008

Before: RENDELL, FUENTES, and CHAGARES, <u>Circuit Judges</u>.
_____

(Filed: August 11, 2008)
_____

Bruce D. Spector (Argued)
Michael Sanford
Law Offices of Michael Sanford
2191 Church Street
Christiansted, VI 00820-4601

<u>Counsel for Appellant</u>

Allan F. John-Baptiste (Argued)
Assistant United States Attorney
1108 King Street - Suite 201

St. Croix, VI 00820

Counsel for Appellee

_____

OPINION OF THE COURT

_____

CHAGARES, Circuit Judge.

Zacheaus Blake appeals his conviction for possessing contraband in prison in violation of 18 U.S.C. §§ 1791(a)(2) and (d)(1)(F).[1] He contends that: (1) the contraband statute is void for vagueness; (2) the administrative rules governing the facility where he was detained exclude criminal prosecution; and (3) the facility where he was detained is not a "prison" within the statute's terms. As Blake's contentions are without merit, we will affirm his conviction.

I.

While awaiting trial on unrelated criminal charges, Blake was detained at the Golden Grove Correctional Facility (Golden Grove) on St. Croix. All detainees at Golden

_____

[1] The statute punishes "[w]hoever . . . being an inmate of a prison, makes, possesses, or obtains, or attempts to make or obtain, a prohibited object. . . ." 18 U.S.C. § 1791(a)(2). After providing a list of various "prohibited object[s]," including "firearm[s] or destructive device[s]," "marijuana," and "any United States or foreign currency," the statute has a catchall provision, prohibiting: "any other object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual." 18 U.S.C. § 1791(d)(1)(F). This federal statute does not apply to all institutions, however. Rather, "the term 'prison' means a Federal correctional, detention, or penal facility or any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General." 18 U.S.C. § 1791(d)(4).

2

Grove receive a Detainee Handbook stating the facility's rules and regulations. The Handbook prohibits, *inter alia*, possession of contraband, including "cell phones and pagers." Appendix (App.) 23. Indeed, "[a]ll unauthorized items are considered contraband when in the possession of a detainee or visitor even if the items are not inherently illegal." Id. According to the Handbook, possession of a cell phone subjects an inmate to "90 to 120 days Punitive Segregation," while possession of all contraband not specifically enumerated carries a 60 to 90 day period of punitive segregation. Id. at 21.

On November 3, 2006, as Blake exited his cell, Bureau of Corrections Officer Daveson James smelled a strong odor of marijuana on Blake and another prisoner. Officer James searched Blake's belongings, which included a pair of gray Fila sneakers. Hidden inside the right shoe, the officer found a cell phone. Inside the left shoe, the officer found a cell phone charger. Blake was subsequently indicted for possessing these prohibited objects.

Before trial, Blake moved to dismiss the indictment, claiming that the contraband statute was unconstitutionally vague as applied to his conduct. Moreover, the only notice he was given that he could not possess these objects—the Detainee Handbook—provided that the sanction for such possession was administrative (non-criminal) segregation. Nevertheless, the District Court denied Blake's motion.

At the end of trial, Blake moved for a judgment of acquittal, repeating his claim

3

that the statute was void for vagueness, and asserting that the Government failed to show both that Golden Grove is a prison under 18 U.S.C. § 1791 and that Blake possessed the cell phone and charger in question.[2] The Court denied Blake's motion and sentenced him to six months imprisonment and a $100 penalty.

## II.

In addressing Blake's motion to dismiss the indictment, "[o]ur standard of review is mixed. We exercise plenary review over the district court's legal conclusions, and review any challenges to the court's factual findings for clear error." United States v. Nolan-Cooper, 155 F.3d 221, 229 (3d Cir. 1998); see United States v. Barbosa, 271 F.3d 438, 469 (3d Cir. 2001).

By contrast, we review the District Court's denial of Blake's motion for judgment of acquittal "de novo and independently appl[y] the same standard as the District Court." United States v. Bobb, 471 F.3d 491, 494 (3d Cir. 2006). As such, we "'review the record in the light more favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'" Id. (quoting United States v. Wolfe, 245 F.3d 257, 262 (3d Cir. 2001)); see also United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1990) ("Only when

---

[2] Blake has apparently chosen to abandon this lack-of-possession argument on appeal. Accordingly, we consider it waived. See Laborers' Intern. Union of N.A., AFL-CIO v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d Cir. 1994).

the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict.").

The District Court of the Virgin Islands had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

III.

Blake first contends that because of § 1791's ambiguous catchall provision, he was "never on notice, while housed at Golden Grove . . . that he was subject to any rules or regulations of the Federal government regarding possession of a cell phone or cell phone charger." Appellant Br. at 11. A defendant is deemed to have fair notice of an offense if the relevant statute defines the offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983); Trade Waste Mgmt. Ass'n, Inc. v. Hughey, 780 F.2d 221, 235 (3d Cir. 1985) (explaining the two criteria for evaluating a vagueness challenge). This analysis should be conducted bearing in mind the context in which the statute is applied. See United States v. Chatman, 538 F.2d 567, 569 (4th Cir. 1976) ("Were the statute in question here an ordinary criminal statute we might feel constrained to hold that it runs afoul of the well-established void-for-vagueness doctrine. In this case, however, we must construe the statute while bearing in mind the unique environment in which it is designed to

5

operate.").[3]  Given the unique prison context in which the statute is applied, the ordinary person would know that possessing a cell phone and a charger in prison "threatens the order, discipline, or security" of that institution.  18 U.S.C. § 1791(d)(1)(F); see Boyce Motor Lines v. United States, 342 U.S. 337, 340 (1952); Chatman, 538 F.2d at 569.

To begin with, the risks presented when inmates possess cell phones and cell phone chargers are patent.  For example, as Gary Evans, the Chief of Programs at the Virgin Islands Bureau of Corrections, explained at trial, "a cell phone is something that is a threat to the security of any institution . . . someone with a cell phone could notify someone on the outside when they're traveling . . . [t]hey could intimidate witnesses, they could, if there is a particular employee they don't like, they could try to send someone after than employee."  App. 64-65.  So too, a cell phone charger "[c]ould be used as a strangling device.  If you wrap the cord around someone's neck, you could strangle them.  You could also hang yourself with it.  So it's not something that we allow in the institution."  App. 65.  Indeed, risks like those highlighted by Chief Evans continually play out in real life.  See, e.g., Sylvester v. Goord, 828 N.Y.S.2d 729 (3d Dep't 2007) (prison inmate received cell phones intended to be used in connection with an escape).

---

[3] The Chatman court further explained, regarding a previous version of § 1791: "A federal penal institution has particular needs, and statutes designed to regulate articles being introduced into such institutions must be scrutinized in light of those needs. Pragmatically speaking, it would be virtually impossible for a single statute to catalogue the numerous items which must be prohibited in the interest of prison safety and security. Accordingly, we hold that § 1791 is not unduly vague or overbroad when viewed in the context of the highly distinctive prison milieu." Id.

6

For this reason, each detainee at Golden Grove receives, and signs a document acknowledging receipt of, the Detainee Handbook. The Handbook states quite clearly that unauthorized items possessed by inmates (including cell phones in particular) are considered contraband.

Moreover, during the last several years, media outlets have documented the growing problem of, and dangers associated with, prisoners possessing cell phones. See Fox Butterfield, Inmates Smuggled Cellphones to Maintain a Foot on the Outside, June 21, 2004, http://www.nytimes.com/2004/06/21/national/21PHON.html?ei=5007&en=ff56 a631ad8df615&ex=1403150400&partner=USERLAND&pagewanted=print&position= ("Prison officials across the country say inmates' possession of cellphones is a growing and serious problem . . . One [cell phone] was found when an escaped inmate was captured in a wooded area near his prison. The phone may have played a role in the escape . . . [Moreover,] [l]ast year, an inmate was charged with running a drug ring from a prison in Ontario, Canada. . . ."); Laura Sullivan, Inmates Smuggle In Cell Phones with Ease, October 12, 2006, http://www.npr.org/templates/story /story.php?storyId =6248833 ("In several criminal cases, inmates have used cell phones to run gangs operating outside of prison, to put hits out on people, to organize drug-smuggling operations . . ."); Roya Wolverson, The Latest Contraband, September 24, 2007, http://www.newsweek.com/id/4 1200 ("Tiny phones equipped with cameras, Internet access and GPA navigation can help orchestrate prison-break plots, drug trafficking, gang violence and harassment of former

victims."); GritsForBreakfast.com, <u>Texas prison guards smuggle cell phones to inmates</u>, http://gritsforbreakfast.blogspot.com /2006/10/texas-prison-guards-smuggle-cell.html (last visited June 19, 2008) (noting that cell phones "obviously pose a major security risk"); MSNBC.com, <u>Cell phones becoming new prison 'cash': Smuggled goods worth more than drugs; officials worry about escape plots</u>, http://www.msnbc.msn.com/id/1249 8707/ (last visited June 19, 2008) ("Cell phones are becoming a contraband problem in Texas prisons, leaving authorities to worry they may be used to plot escapes or conduct criminal business behind bars."); Textually.org, <u>Inmates Smuggle Cell Phones For More Than Calling</u>, June 30, 2007, http://www.textually.org/textually/archives/2007/06/016470 .htm ("If prisoners had cell phones 'they could organize simultaneous riots in all 33 [California] institutions if they wanted to.' . . . 'If there were some type of escape plot, it could all be done via the internet, via instant messages.'").

That cell phones can, and have been, used for various dangerous and unlawful purposes in the prison context is, thus, quite clear. Given these readily apparent dangerous uses, made even more conspicuous by the media's coverage of this very issue, the ordinary person would know that an inmate's possession of a cell phone would "threaten the order, discipline, or security of a prison, of the life, health, or safety of an

individual." 18 U.S.C. § 1791(d)(1)(F).[4]  Accordingly, Blake had sufficient notice of the federal crime of which he was convicted.

As to the enforcement component of the vagueness inquiry, as Blake has attacked the statute only as applied to his conduct (rather than facially), this inquiry is also informed by the facts of this case.  There may very well be a situation that raises serious vagueness concerns from an enforcement perspective.  But applied to the possession of a cell phone and charger, objects an ordinary person would know he or she could not possess in jail, there is not a sufficient level of concern regarding the level of discretion given to police to render this statute unconstitutional.  Cf. City of Morales v. Chicago, 527 U.S. 41 (1999) (striking down an anti-loitering statute because the definition of loitering—"remaining in any one place with no apparent purpose"—was so vague that it gave Chicago police "absolute discretion . . . to determine what activities constitute[d] loitering").

IV.

As a corollary to his lack-of-notice argument, Blake points to the Detainee Handbook, which provides for an administrative sanction for the possession of a cell phone.[5]  Since the Handbook does not mention a penalty other than an administrative

---

[4] While the vagueness inquiry is an objective one, we note in passing that, by hiding the cell phone and charger in his shoes, Blake demonstrated actual knowledge that he could not possess the cell phone and charger he was charged with possessing.

[5] Blake notes that for some of the more serious violations described therein, the Handbook indicates that prison officials will "initiate criminal charges" in addition to the

9

sanction, and indeed states that criminal charges will be initiated for more serious violations, Blake asserts that the Government is, in essence, estopped from prosecuting him criminally for the possession of contraband. Blake is mistaken. The Handbook states: "You are subject to obey the laws of the United States and the Territory of the Virgin Islands. If you violate any of those laws you may be charged and tried for its violation in the same manner as any United States citizen." App. 20. Given this clear notice, we reject Blake's due process-related arguments concerning the notice provided by the Detainee Handbook.

V.

Addressing Blake's final argument, section 1791(d)(4) requires the defendant be "an inmate of a prison," with "prison" defined as "a Federal correctional, detention, or penal facility or any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General." 18 U.S.C. § 1791(d)(4). At trial, Chief Evans testified that he knew of an agreement between the Virgin Islands Government and the United States regarding the housing of federal prisoners at Golden Grove. The agreement was in effect, Evans added, on the day Officer James discovered Blake's cell phone and cell phone charger. Moreover, Deputy Bissey, an employee of the United States Marshals Service, testified that he has transported Blake to and from Golden Grove, for federal court appearances, on a number of occasions.

provision for administrative sanction. See App. 20.

10

Given the testimony of Chief Evans and Deputy Bissey (including the fact that the United States Marshals Service is a "bureau within the Department of Justice *under the authority and direction of the Attorney General*," 28 U.S.C. § 561 (emphasis added)), and reviewing the record in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Blake was taken to a "facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General." See 18 U.S.C. § 1791(d)(4).

## VI.

For the foregoing reasons, we will affirm the judgment of the District Court.


RENDELL, Circuit Judge, dissenting.

The as-applied challenge mounted by Blake causes us to examine the criminal statute in question in light of the prosecuted conduct, to see if the terms of the statute are "sufficiently explicit to inform those who are subject to it what conduct . . . will render them liable to its penalties." Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926). Here, the statute prohibits prisoners from possessing, under pain of criminal prosecution, guns, drugs, currency, and "any other object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual." 18 U.S.C. § 1791(d)(1)(F). Blake contends that this did not clearly inform him that he would be committing a crime if he possessed a cell phone or a cell phone charger. I think he

11

makes a good point.  The fact that one could conjure up ways in which a cell phone could be misused would not necessarily cause "the ordinary person" to expect that a cell phone, as such, poses the 'threat' that the statute describes.  See Kolender v. Lawson, 461 U.S. 352, 357 (1983).  Unlike guns, drugs, or explosives clearly listed in § 1791, cell phones have a primarily legal and productive use.  The media publicity regarding certain prisoners' creative use of a cell phone does not render it an object that, in and of itself, the ordinary person would know poses a threat to order or safety.  The fact that cell phones might be put to bad use is a reason for Congress to specifically include them–like cash, see 18 U.S.C. § 1791(d)(1)(E)–in the statute, not to read the statute to include them.  The danger posed by a cell phone charger, in and of itself, is even more remote.

Moreover, the relevance of the prohibition of cell phones in the Detainee Handbook in the prison where Blake was housed is questionable.[6]  It is actually a red herring, because the test is whether a person of ordinary intelligence would know the conduct was prohibited by federal criminal law, not by some other rule or regulation.  Moreover, the fact that the government relies on this prohibition seems to fortify the

---

[6]It should be noted that the detainee handbook does not list a cell phone charger by name. However, since the charger is not an "authorized item," it would be deemed an "unauthorized item" and fall under the handbook provision stating that "[a]ll unauthorized items are considered contraband when in the possession of a detainee or visitor even if the items are not inherently illegal.  Authorized items may also be considered contraband if those items are in excess of the quantity allowed into the facility."  (App. 23.)  Although the statute itself provides no notice that a cell phone charger could subject a prisoner to criminal sanctions, the majority finds that constitutionally adequate notice can be found in this prohibition against "[a]ll unauthorized items."

12

conclusion that the statute alone fails to provide adequate notice. (Interestingly, the government concedes that this is the first and only criminal prosecution for this conduct, which is routinely subject to administrative sanctions.) Furthermore, clarity in statutes that criminalize activity is required so as to prevent arbitrary or differing enforcement. See Smith v. Goguen, 415 U.S. 566, 574 (1974); Trade Waste Mgmt. Ass'n, Inc. v. Hughey, 780 F.2d 221, 235 (3d Cir. 1985) (noting that criminal enactments are subject to a much stricter vagueness test than are economic regulations).[7] The fact that a particular prison prohibits cell phones or cell phone chargers is of no moment in deciding what constitutes a federal crime.[8]

---

[7] The passage the majority cites from Chatman is inapposite. It was specific to a former version of § 1791 that stated "[w]hoever contrary to rule or regulation promulgated by the Attorney General, introduces or attempts to introduce into or upon the grounds of any Federal penal or correctional institution . . . anything whatsoever," 18 U.S.C. § 1791, June 25, 1948, c. 645, 62 Stat. 786, is subject to criminal penalties. The implementing regulation added "without the knowledge or consent of the warden or superintendent of such Federal penal or correctional institution is prohibited." 28 C.F.R. § 6.1 (1975). Even though the statute in Chatman was broad, it provided more notice than the provision at issue here as visitors to a prison would know that bringing anything on the grounds is prohibited unless they inform or receive the permission of the warden or superintendent. Moreover, in this case, the statute delegates no rule-making authority to the Golden Grove Facility or the Attorney General to further clarify the scope of the statute.

[8] Nor is Blake's knowledge that he could not possess the cell phone and charger relevant. Although Blake knew that a cell phone was considered contraband and prohibited under Golden Grove's rules, he did not have fair notice that it would result in federal criminal penalties. In fact, according to the detainee handbook, possession of a cell phone is to result in 90 to 120 days of punitive segregation. Blake's argument is not that ignorance of the law should be a defense to his conduct, but rather that, even had he read § 1791, he could not have known that possession of a cell phone or charger would subject him to criminal penalties.

13

Accordingly, I respectfully dissent from the majority's view. I would vacate Blake's conviction because the statute is void for vagueness as applied to him.