**IN RE: APPLICATION FOR A COURT ORDER AUTHORIZING AT&T TO PROVIDE HISTORICAL CELL TOWER RECORDS; IN RE: AT&T SIM CARD #89014103211858609369; IN RE: AT&T BLACK SAMSUNG FLIP PHONE MODEL #SGH-A197, FCC ID#A3LSGHA197, SIN RQBZ917758D; IN RE: APPLICATION FOR A COURT ORDER AUTHORIZING SPRINT/NEXTEL CORPORATE SECURITY TO PROVIDE HISTORICAL CELL TOWER RECORDS**

Misc. Nos. ST-11-WS-08, ST-11-WS-09, ST-11-WS-10, ST-11-WS-12

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

April 29, 2011

127

DOUGLAS J. SPROTTE, ESQ., Assistant Attorney General, U.S. Virgin Islands Department of Justice, St. Thomas, USVI, *Attorney for the People*.

CHRISTIAN, *Judge*

## MEMORANDUM OPINION

(April 29, 2011)

Pending before this court are two motions filed by the People of the Virgin Islands (the "People"), both titled People's Motion for an Order of Production Order (sic) Pursuant to 18 U.S.C. § 2703. The People also have filed affidavits and petitions in support of search warrants for a cellular telephone and SIM card. Finally, the People have moved the court to seal the affidavits in support of the motions and warrant petitions, all of which contain the same information. All of these requests are made in the course of continuing investigations of three murders which occurred in the Mandahl Bay area of St. Thomas, Virgin Islands. For the reasons set forth below, the People's requests will all be granted.

## I. People's motion for an order of production pursuant to 18 U.S.C. § 2703.

In their motions made pursuant to 18 U.S.C. § 2703, which is a portion of the federal Stored Communications Act ("SCA"),[1] the People request that AT&T and Sprint/Nextel be directed to provide certain information to the Office of the Attorney General and/or the Virgin Islands Police Department. Specifically, the People request that the two companies provide:

> The name; address; local and long-distance telephone connection records, or records of session times or durations; telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address, not including the contents of any communication for their cell tower(s) activity within closest proximity to GPS Coordinates 18.21.37.98 and 64.53.53.97, for the time period between 9:00 p.m. and 11:00 p.m. on April 1, 2011.

Under the SCA,

> A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity . . . obtains a court order for such disclosure under subsection (d) of this section. . .[2]

In turn, subsection (d) provides,

> A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. In the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State. A court

---

[1] 18 U.S.C. §§ 2701-2712.
[2] 18 U.S.C. § 2703(c)(1)(B).

issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify such order, if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider.

 The first question is whether the Superior Court of the Virgin Islands is a court of competent jurisdiction for purposes of the SCA. "The term 'court of competent jurisdiction' includes . . . a court of general criminal jurisdiction of a State authorized by the law of that State to issue search warrants."[3] Of course, the Territory of the Virgin Islands' is not a "state" of the Union, but an unincorporated territory.[4] Therefore, the United States Congress must expressly give the Virgin Islands the authority of a state court under the SCA; for the Superior Court to be a court of competent jurisdiction under the statute.[5] While the definitional section of the SCA does not define "state", it does incorporate all of the definitions found in 18 U.S.C. § 2510.[6] In that section "state" is defined to include ". . . any territory or possession of the United States."[7] Finally, the Superior Court has general criminal jurisdiction and is authorized to issue search warrants.[8] Reading all of these statutory provisions together, it is clear that the Superior Court is a "court of competent jurisdiction" under the SCA and may entertain the People's instant motion.

 There is no case law in the Virgin Islands construing this statute. However, the Third Circuit recently opined on whether the type of information requested by the People may be obtained under the SCA and the appropriate standard to be applied by courts when considering such a request.[9] This tribunal finds the Third Circuit's interpretation and

---

[3] 18 U.S.C. §2711(3)(B).

[4] *United States ex rel. Leguillou v. Davis*, 2 V.I. 298, 305, 115 F. Supp. 392, 394 (D.V.I. 1953) (decided under the 1936 version of the Organic Act of the Virgin Islands), *rev'd on other grounds*, 3 V.I. 511, 212 F.2d 681 (3rd Cir. 1954).

[5] [2] *See, Harris v. Boreham*, 3 V.I. 565, 572, 233 F.2d 110, 113 (3rd Cir. 1956) ("It is also settled that Congress may delegate to a territory such of these powers as it sees fit.").

[6] 18 U.S.C. §2711(1).

[7] 18 U.S.C. §2510(3).

[8] 4 V.I.C. § 76(b), as amended by Act No. 5890; 5 V.I.C. § 3901.

[9] *In re Application of the United States for an Order Directing a Provider of Electronic Communication Service to Disclose Records to the Government*, 620 F.3d 304 (3rd Cir. 2010).

conclusions persuasive for three reasons.[10] First, the court agrees with the analysis of the SCA and related statutes which are involved in making a determination under § 2703(d). Second, it is appropriate to give special consideration to pronouncements of the Third Circuit on federal statutes because the Virgin Islands are within the Third Circuit and consistency in the legal interpretation of federal statutes is preferred.[11] Finally, from a factual standpoint, the information sought in *In re Application of the United States*, and that sought in this case are very similar.

■ The information sought by the People under the SCA is known as "historical cellular tower data" ("HCTD") or "cell site location information".[12] HCTD is stored in cellular towers and when retrieved can reveal the telephone numbers of persons who made calls which were routed through the towers in question. Although noting that there is a split of authority among federal district courts, the Third Circuit, after a solid analysis of the applicable statutory language, legislative history, and policy considerations, joined those courts which hold that HCTD may be obtained under the SCA.[13] To obtain an order under § 2703(d) for HCTD, the People must provide ". . . specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation."[14] This is an "intermediate" standard which is less stringent than probable cause.[15]

■ In this case, the People have met the standard required under § 2703(d). In their affidavit, the People affirm the following facts: 1) on April 1, 2011, at approximately 10:00 p.m., the victim of the third

---

[10] The Supreme Court of the Virgin Islands has declared that holdings of the Third Circuit are binding on the Superior Court. However, it is apparent from the context of the discussion that the Supreme Court was referring to Third Circuit decisions made prior to the creation of the Supreme Court. *In re People*, 51 V.I. 374, 389 n. 9 (V.I. 2009). Subsequent to the creation of the Supreme Court, the relationship between the Superior Court and the Third Circuit is the same as that between state trial courts and federal courts of appeals pursuant to Section 23 of the Revised Organic Act of the Virgin Islands of 1954, as amended.

[11] *See, Schnabel v. Tyler*, 230 Conn. 735, 646 A.2d 152, 158-159 (1994); *Whipps Land & Cattle Co., Inc. v. Level 3 Comm., LLC*, 265 Neb. 472, 658 N.W.2d 258, 267 (2004).

[12] *In re Application of United States*, 620 F.3d at 305.

[13] *Id.* at 306-313.

[14] 18 U.S.C. § 2703(d).

[15] 620 F.3d at 313-315.

Mandahl Bay homicide, Sean O'Connell, was ambushed at night in a dark area of Mandahl Bay Road; 2) Mr. O'Connell was in his vehicle and travelling immediately behind another vehicle which was allowed to pass without incident; 3) Mr. O'Connell's vehicle was the same make and model as one belonging to a witness in the pending case for the first two Mandahl homicides; 4) the witness, Jamie John, in the on-going prosecution[16] resides in the same area and traverses the same road to get to and from home; and 5) based on the experience of the affirming detective, criminal persons are increasingly using cellular telephones in the course of their illicit activities. Based on those facts, the People also assert, and the court agrees, that based on the dark lighting conditions, it is unlikely that the O'Connell homicide could have been accomplished without some advance notice to the assailant about the specific approaching vehicle. Moreover, the People have limited their request to seek information for a short period — one hour prior to and one hour after the homicide. Therefore, the request is not unduly broad.

█ Having found that the People have presented specific and articulable facts, the court also concludes that the information sought is relevant and material to the investigation of the O'Connell homicide. The People are seeking to use this information to identify the perpetrator of the murder or his or her associates. Law enforcement may properly seek HCTD through the SCA process for the purpose of obtaining information which will lead to the identity of those who engage in criminal activity.[17]

█ I also must assess whether the entities from which the information is sought are "provider[s] of electronic communication service," whether the HCTD is a "record or other information pertaining to a subscriber to or customer of" an electronic communication service, and whether HCTD is content information under the SCA.[18] Plainly, both Sprint/Nextel and AT&T are providers of electronic communications service under the Act.[19] Further, HCTD has been construed to constitute records or other information pertaining to a subscriber to or customer of an electronic

---

[16] *People of the Virgin Islands v. Neville Potter*, Superior Court Case No. ST-09-CR-78.

[17] *See, United States v. Suarez-Blanca*, No. 1:07-CR-0023-MHS/AJB, 2008 WL 4200156 * 2 (N.D. Ga. Apr. 21,2008).

[18] *In re Applications of the United States of America for Orders Pursuant to Title 18, United States Code, Section 2703(d)*, 509 F. Supp. 2d 76, 79-80 (D. Mass. 2007).

[19] 18 U.S.C. § 2510(15).

communication service.[20] Finally, HCTD, and in particular the information requested by the People herein, is not content information under the SCA as the substance of any calls is not being sought.[21]

Finally, the Court must consider whether the use of § 2703(d) violates any provisions of Virgin Islands law because that section mandates "In the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State." In 1990, the Virgin Islands enacted the Electronic Surveillance Act ("ESA")[22] which contains language that is substantially similar, but not identical, to the federal Electronic Communications Privacy Act ("ECPA").[23] The ESA provides procedures by which the People intercept the contents of wire and oral communications as defined in the Act. If the ESA is applicable to the People's present request, the court would be unable to apply the lesser standard of § 2703(d) under the SCA. The ESA expressly requires that courts considering applications thereunder must find probable cause to believe: 1) that a person is committing a crime listed in the ESA; 2) that communications about the crime will be obtained through the process; and 3) the facilities from which the communications will be intercepted are being utilized, in some fashion, in the commission of the crime.[24] Moreover, the court would have to find that the People fruitlessly attempted traditional investigatory methods, or that trying those techniques would be futile.[25] None of these findings are needed under the SCA.

▮ Importantly, and unlike the ECPA, the ESA defines "contents" of wire and oral communications to include "any information concerning the identity of the parties to such communication."[26] As noted above, the purpose for which the People seek relief under the SCA is to attempt to ascertain the identities of the person or persons who took part in the third

---

[20] *In re Applications of the United States of America*, 509 F. Supp. 2d at 80.

[21] **[9]** *Id.*, This distinction is important because content information may only be obtained under the SCA upon a showing of probable cause in the course of the usual warrant procedure pursuant to 18 U.S.C. § 2703(a).

[22] 5 V.I.C. §§ 4101-4107. This is the only Virgin Islands statute the court located which may potentially apply to the People's requests.

[23] 18 U.S.C. §§ 2510-2522.

[24] 5 V.I.C. §§ 4105(b)(1), (2), (4).

[25] 5 V.I.C. § 4105(b)(3).

[26] 5 V.I.C. § 4101(c).

homicide at Mandahl through their cellular telephone communications. Thus, on its face, it would appear that the People's request falls under the ESA. However, that Act applies to the interception of wire and oral communications. "Intercept" is defined as the ". . .aural acquisition of the contents of any wire or oral communication. . . ."[27] Using the ordinary meaning of the words used,[28] the ESA applies only when the communication is being obtained by a method that allows the acquirer to actually hear the communication, which is not the present situation. This conclusion is buttressed by the interpretation of the ECPA which has a definition of "intercept" which is almost identical to the ESA's.[29] Under the ECPA "an 'intercept' under the ECPA must occur contemporaneously with transmission."[30] Even if the information sought is content under the ESA, it clearly is not being obtained simultaneously with any transmission of a communication, which would have taken place some weeks ago. Therefore, the ESA does not apply to the People's present request, and they are not prohibited from pursuing the remedy provided by § 2703(d) of the SCA.

In sum, the People are seeking information that is material and relevant to an on-going criminal investigation and have met their burden of proof under § 2703(d). Moreover, the procedures of this section of the SCA are not contrary to any provisions' of Virgin Islands law. Accordingly, the Court will enter an order granting the People's motions both as to AT&T and Sprint/Nextel.

### II. Issuance of the search warrant for a cellular telephone and SIM card.

 The People also request that the court issue a search warrant to explore the contents of an AT&T cellular telephone and a SIM card found in the prison cell of Neville Potter. Such items are contraband under the Virgin Islands Bureau of Corrections' Detainee Handbook.[31] Mr. Potter is currently being held pending his second trial for the first two Mandahl

---

[27] 5 V.I.C. 4101(e).

[28] *See, People v. Baxter*, 49 V.I. 384, 388 (V.I. 2008).

[29] 18 U.S.C. § 2510(4) (" 'intercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication. . . .")

[30] *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3rd Cir. 2003).

[31] *United States v. Blake*, 288 Fed. Appx. 791, 792 (3rd Cir. 2008) (unpublished opinion).

murders. His prison cell was searched on April 1-2, 2011. In addition to the facts recited in Section I above, the affidavit adds that Mr. Potter was previously found in possession of a SIM card while awaiting his first trial, and it had been confiscated. It is of note, especially in light of all of the circumstances alleged in the affidavit, that one of the concerns with detainees having cell phones while in custody is that it creates the opportunity to intimidate witnesses.[32] Given that Mr. Potter has obtained contraband while in pretrial detention on at least two occasions, there is evidence on which one can conclude that he has associates who are willing to assist him to, at least, circumvent the rules of the Bureau of Corrections. Reading the facts and circumstances recited in the affidavit in a common sense manner the court concludes there is probable cause to issue the warrant to search the cell phone and SIM card.[33]

 The affidavit requests that the warrant be directed to the "Virgin Islands Police Department and/or the Office of the Attorney General." However, the proposed search warrant purports to be directed to the "United States Marshal, Special Agent of the Federal Bureau of Investigation, Officer of the Virgin Islands Police Department, Agent of the Office of the Attorney General, or any other authorized local or federal law enforcement official." To be clear, in the Virgin Islands a search warrant is to be directed to a peace officer.[34] While officers of the Virgin Islands Police Department and investigators of the Office of the Attorney General, as designated by the Attorney General, are peace officers, the federal officials set out in the proposed search warrant are not.[35] Therefore, the warrant will be directed only to the officials who are peace officers.

 The People also request that the court authorize the peace officers to whom the warrant will be issued to obtain the assistance of computer and/or technical experts within various entities[36] with expertise in obtaining electronic data and information from items such as cell phones

---

[32] *Id.* at 794.

[33] *See, e.g., United States v. Miknevich*, 638 F.3d 178, 182 (3rd Cir. 2011).

[34] 5 V.I.C. § 3902(a).

[35] 5 V.I.C. § 3561.

[36] The Virgin Islands Police Department, the Office of the Attorney General — Division of Investigative Services, the Federal Bureau of Investigation, the Lee County, Florida Sheriff's Office, and/or the Florida Department of Law Enforcement.

and SIM cards. The affidavit avers that, based on the affiant's conversations with other law enforcement officials with experience in this area, such searches at times must be done in a laboratory under controlled conditions. Moreover, the proposed warrant proposes that the searches may be executed in the facilities of the assisting entities, and these facilities appear to be outside of the Virgin Islands. The court may authorize persons other than peace officers to assist them in executing a search warrant.[37] However, a peace officer must be present with the assisting individuals for the search.[38] In addition, while a search warrant may generally not be executed by an officer outside of his or her territorial jurisdiction, if the officer is accompanied by an official with authority in that outside jurisdiction, the warrant may be executed.[39]

 Taking the foregoing precedents and averred circumstances together, the court can, and will, authorize the requested entities to aid the Virgin Islands peace officers in the execution of the search warrant. However, a Virgin Islands peace officer must be present during all parts of the search to meet the strictures of the Virgin Islands Code, whether within or outside of the Territory. In addition, an authorized official of the pertinent extra-territorial jurisdiction where any portion of the warrant is executed must be present during that process. Because the usual fourteen (14) day stricture for the return of a search warrant does not apply to the instant process,[40] the warrant will provide for a return within a reasonable time, not to exceed forty-five (45) days.[41]

### III. Motion to seal affidavits in support of search warrant and motion for 18 U.S.C. § 2703(d) order.

The People also request that the affidavits filed in support of the requests for search warrants and for orders under 18 U.S.C. § 2703(d) be sealed. The People are concerned that public disclosure of the affidavits, all of which are the same, will cause persons who are involved with the alleged criminal activity to flee and/or conceal or destroy potential

---

[37] 5 V.I.C. § 3903.

[38] *Id.*

[39] 68 Am. Jur. 2d *Searches and Seizures* § 300 (Database Updated November 2010).

[40] 5 V.I.C. § 3501(b); FED. R. CRIM. P. 41(e)(2)(B).

[41] This is the time frame for tracking device warrants pursuant to FED. R. CRIM. P. 41 (e)(2)(C).

evidence. No legal authority for this request is presented in the motion in contravention of the local rules of procedure.[42]

 However, all records of this court are public records under Virgin Islands law.[43] Citizens of the Territory have a general right to inspect any and all public records upon request, subject to reasonable rules of the relevant branch or agency, unless there is a statutory exemption making said records confidential.[44] "By statutorily making . . . court records public documents, the Legislature simultaneously rejected any intention of . . . sealing them."[45] As the affidavits have been filed with the court and are court records, they are presumably public records and may only be sealed if there is statutory authority to that effect.[46]

 Contained within the Public Records Act, there is a section which lists a number of documents which are deemed to be confidential.[47] While the investigation records of law enforcement officers are confidential,[48] I do not consider the affidavits at issue to fall into this category of confidential documents. Affidavits in support of search warrants must be sworn before, and issued by, an appropriate judicial officer, but there is no such requirement for investigation reports of peace officers. The affidavits also do not qualify as criminal identification files of the Virgin Islands Police Department, which also are confidential by statute.[49] None of the other confidential record designations relate to court records or criminal investigations. Thus, there is no provision making affidavits submitted to the court in support of a petition for a search warrant confidential.

 However, a court may enjoin the examination of a particular public record if facts set forth in an affidavit support a finding that inspection of the document would ". . . clearly not be in the public interest and would substantially and irreparably injure any person or persons."[50]

---

[42] SUPER. CT. R. 7; LRCR 1.2; LRCI 7.1(c).

[43] 3 V.I.C. § 881(a); 4 V.I.C. § 241.

[44] 3 V.I.C. §§ 881(b), (c).

[45] *Santiago v. People*, 51 V.I. 283, 298 (V.I. 2009) (citation omitted).

[46] *See, id. See also*, FED. R. CRIM. P. 41(i) (mandating that upon return, the warrant, inventory, and related papers must be forwarded to the clerk).

[47] 3 V.I.C. § 881(g).

[48] 3 V.I.C. § 881(g)(5).

[49] 3 V.I.C. § 881(g)(9).

[50] 3 V.I.C. § 881(h).

The injunction is ". . . subject to the rules of civil procedure. . . ."[51] In this case, it is clear that a person or persons, at this point unidentified, took the life of another person. Moreover, the perpetrator remains at large. In light of the penalties a person faces for murder, which is up to life incarceration without parole, it is reasonable to believe that any inkling that he or she may be the subject of an investigation would cause the person to flee or dispose of any evidence in her or his possession. The court determines that frustrating the investigation of a murder is not in the public interest as it would allow an apparently dangerous individual to act with impunity. Moreover, impeding the government's ability to carry out one of its most sacred duties, protect the public safety, imposes an irreparable harm on all persons in the community. An injunction under § 881(h) is appropriate in the present situation. Consistent with this determination, other jurisdictions have held that it is appropriate to seal, for a period of time, search warrants or supporting affidavits where a criminal investigation may be compromised by public disclosure.[52]

The affidavits will be sealed and an injunction issued which will bar the Office of the Attorney General, the Virgin Islands Police Department, the entities which will aid in the execution of the search warrant, and the Superior Court, and the agents and employees of all of them, from disclosing the affidavits or their contents. In addition, because the facts of the affidavit are recited in this opinion, it also will be subject to the sealing and injunction order. Failure to take this step would render the injunction and sealing order impotent. However, in light of the clear public policy in favor of inspection of public records, the injunction and sealing order must have a deadline. This order will remain in effect for sixty (60) days from the date of its entry or until an arrest is made based on the fruits of the search. If additional time is required, the People may submit a properly supported request for an extension of this time frame.

---

[51] *Id.*

[52] *See, Newspapers of New England, Inc. v. Clerk-Magistrate of the Ware Division of the District Court, Dept.*, 403 Mass. 628, 531 N.E.2d 1261, 1263-1264 (1988) (noting that court had inherent right to impound search warrant affidavit even though it was a public record by statute); *PG Publishing Co. v. Commonwealth*, 532 Pa. 1, 614 A.2d 1106, 1107-1109 (2002) (decided under common law right of access to court records).

## IV. Conclusion.

Based on the foregoing points and authorities, the Court will grant the People's requests for orders directed to Sprint and AT&T pursuant to 18 U.S.C. § 2703(d). Having found probable cause, search warrants will be issued to the Virgin Islands Police Department and the Office of the Attorney General directing the retrieval of data and information from the subject cellular telephone and SIM card. In light of the technical nature of this search, those agencies will be authorized to seek assistance from the entities named in their affidavit. Finally, the affidavits filed in support of the motions and petitions, and this opinion, will be sealed in accordance with Section III of this opinion. The court will issue the appropriate orders and warrants contemporaneously herewith.