<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————

**No. 11-4676**

————————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JOHNNY BEASON,

        Defendant - Appellant.

————————

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.   Irene M. Keeley, District Judge.  (1:10-cr-00105-IMK-JSK-1)

————————

Argued:  February 1, 2013        Decided:  April 19, 2013

————————

Before WILKINSON and FLOYD, Circuit Judges, and Joseph R. GOODWIN, United States District Judge for the Southern District of West Virginia, sitting by designation.

————————

Reversed by unpublished opinion.  Judge Floyd wrote the majority opinion, in which Judge Goodwin joined.  Judge Wilkinson wrote a dissenting opinion.

————————

**ARGUED:** Kristen Marie Leddy, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Martinsburg, West Virginia, for Appellant.   Brandon Scott Flower, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, West Virginia, for Appellee.   **ON BRIEF:** Brian J. Kornbrath, Federal Public Defender, Clarksburg, West Virginia, for Appellant.   William J. Ihlenfeld, II, United States Attorney, Wheeling, West Virginia, for Appellee.

————————

Unpublished opinions are not binding precedent in this circuit.

FLOYD, Circuit Judge:

Appellant Johnny Beason pled guilty to possessing contraband in prison in violation of 18 U.S.C. § 1791(a)(2), (d)(1)(F) (2006) (amended 2010). Beason appeals his conviction, contending that the statute's catchall contraband provision that prohibits possession of "any other object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual," id. § 1791(d)(1)(F), is void for vagueness as applied to his conduct.[*] We agree and for the reasons that follow reverse his conviction.

I.

While in federal prison for violating the terms of his supervised release on unrelated charges, Beason acquired a cell phone. On May 20, 2010, the prison unit corrections officer observed Beason using a cell phone in his cell. Upon realizing he was being watched, Beason initially tried to hide the cell phone. Beason then complied with the officer's request to surrender the phone. The Bureau of Prisons (BOP) avers that

---

[*] The statute criminalizes "[w]hoever . . . being an inmate of a prison, makes, possesses, or obtains, or attempts to make or obtain, a prohibited object. . . ." 18 U.S.C. § 1791(a)(2). In addition to the catchall provision at issue here, the statute specifically prohibits "firearm[s] or destructive device[s]," "marijuana," and "any United States or foreign currency." Id. § 1791(d)(1)(A),(B),(E).

3

cell phones pose significant security risks to prisons because inmates can use cell phones to arrange fraud schemes, plan assaults, and coordinate escapes. The presence of cell phones has recently escalated in Federal Correctional Institution (FCI) Morgantown, where Beason was housed. Because of this, several cases of possession were referred for prosecution in hopes of deterring the problem.

Upon entry to FCI Morgantown, each inmate is given a Handbook, prepared by the BOP, of the prison's rules and regulations. As relevant in the instant case, the Handbook requires inmates to use the prison's phone system. The prison system records the calls because inmates have used the system for various improper purposes, including attempts to introduce contraband into the prison. The prison also requires all names of individuals and telephone numbers to be on the inmate's approved telephone list before a call can be placed. The prison reviews the lists and calls "to ensure the safety and security of the institution." The Handbook also prohibits the possession of "contraband" in the prison. The BOP defines contraband as anything not received through official means. If found in violation of these rules, the Handbook alerts the inmate that he can be subject to various administrative penalties. However, at the time, the words "cellular phone" or "mobile phone" did not appear in the Handbook. Additionally, the Handbook provides for

4

punishment for a Code 108 which punishes inmates for prohibited acts, including possession of a hazardous tool. When the problem of cell phone possession escalated, the prison staff attempted to inform inmates that cell phone possession would now be prosecuted. Apparently some inmates were informed at briefings that cases of cell phone possession could be prosecuted. Although Beason admits that he was aware that cell phones were prohibited contraband and a possible Code 108 violation and that possession could subject him to administrative sanctions, he states that he did not know that possession of a cell phone could lead to prosecution.

At the time of Beason's offense, cell phones were not included explicitly in 18 U.S.C. § 1791's definition of "prohibited object[s]." Beason was convicted under the catchall provision of the statute, which allows prosecution for possession of "any other object that threatens the order, discipline, or security of a prison." Id. § 1791(d)(1)(F). In August 2010, Congress passed the Cell Phone Contraband Act of 2010, which amended the statute at hand and specifically makes possession of a cell phone by federal inmates illegal. Pub. L. No. 111-225, § 2, 124 Stat. 2387 (codified at 18 U.S.C § 1791).

On November 23, 2010, the government filed a one-count Information, charging Beason with possession of contraband in prison. Beason then filed a motion to dismiss the Information,

5

arguing that the statute, as applied to his conduct, was unconstitutionally void for vagueness. The magistrate judge issued a Report and Recommendation (R & R) that recommended that Beason's motion to dismiss be denied. The district court adopted the magistrate's R & R and denied Beason's motion to dismiss. Beason then entered a conditional guilty plea to the offense, with the proviso that he reserved the right to appeal whether the statute is void for vagueness. After his guilty plea, the district court sentenced Beason to two years of probation. Beason timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

This court reviews a district court's interpretation of a statute de novo. United States v. Nelson, 484 F.3d 257, 260 (4th Cir. 2007).

Beason first argues that 18 U.S.C. § 1791's catchall provision is void for vagueness as applied to him because the statute failed to put him on notice that possession of a cell phone was prohibited, and because of this his conviction must be set aside. A conviction does not comport with due process if the statute under which a defendant is charged: "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or

6

encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008). This analysis should be conducted bearing in mind the context in which the statute is applied. See United States v. Chatman, 538 F.2d 567, 569 (4th Cir. 1976).

The government cites this Court's decision in Chatman, which found that a prior version of the statute at issue in this case was not vague. 538 F.2d at 569. In Chatman, the defendant introduced 24.3 grams of marijuana into the correctional facility. Id. at 568. At that time, 18 U.S.C. § 1791 provided that "[w]hoever contrary to any rule or regulation promulgated by the Attorney General, introduces or attempts to introduce into or upon the grounds of any Federal penal or correctional institution . . . anything whatsoever," 18 U.S.C. § 1791 (1976) (amended 1984), is subject to criminal penalties. Its implementing regulation gave further guidance, adding "without the knowledge or consent of the warden or superintendent of such Federal penal or correctional institution is prohibited." 28 C.F.R. § 6.1. (1975). Viewing the statute in its context of operation—federal prisons, this Court reasoned that:

> A federal penal institution has peculiar needs, and statutes designed to regulate articles being introduced into such institutions must be scrutinized in light of those needs. Pragmatically speaking, it would be virtually impossible for a single statute to catalogue the numerous items which must be prohibited in the interest of prison safety and security.

7

538 F.2d at 569 (citations omitted).

The government argues that the previous version of 18 U.S.C. § 1791 withstood a vagueness challenge despite being "even broader" than the statute at hand. The government notes that thereafter Congress refined the definition of "prohibited object[s]," therefore giving even more guidance as to what is prohibited in prisons. Despite the government's arguments, we find Chatman to be inapposite for three reasons. First, the statute at hand does not provide more notice than the former version of the statute at issue in Chatman. In fact, the contrary is the case. Under the former statute's wording that prohibited "anything whatsoever," it was quite clear that no item may brought into a prison. Further, there was a simple way to get clarification regarding whether an item would be allowed in the prison—obtain the consent of the warden or superintendent. Pursuant to the current version, a person has no way to seek consent for possession of an item, and under this version inmates must guess at what items are prohibited. A statute that requires an inmate to guess at what exact items are prohibited "fails to provide a person of ordinary intelligence fair notice of what is prohibited," Williams, 553 U.S. at 304, and is void for vagueness.

Second, the challenged version of the statute specifically bans only three types of items: (1) items that can inflict

8

injury on others, such as weapons; (2) items that can cause intoxication; and (3) currency. 18 U.S.C. § 1791(d)(1)(A)-(E). Unlike firearms or drugs that are listed in the statute, a cell phone in and of itself poses no threat to safety. "The fact that cell phones might be put to bad use is a reason for Congress to specifically include them—like cash, see 18 U.S.C. § 1791(d)(1)(E)—in the statute, not to read the statute to include them." United States v. Blake, 288 F. App'x 791, 796 (3rd Cir. 2008) (Rendell, J., dissenting). In sum, there is no discernible relationship between the specifically enumerated items and a cell phone that would allow a reasonable person to infer that a cell phone would be prohibited as well.

Third, unlike the marijuana in Chatman, the illegality of which is widely known to the general public, cell phones are not inherently illegal. It follows that a reasonable person would not be aware that possession of an innocuous legal item would subject them to prosecution. For all of these reasons, the statute does not provide an ordinary person fair notice that possession of a cell phone would subject him to federal criminal sanctions.

The government next argues that Beason knew a cell phone could "threaten the order, security, and discipline of the prison" because he knew he could be disciplined for possession of the cell phone through the Handbook's prohibitions on

9

possessing contraband or by a Code 108 violation. The fact that Beason knew that he could be subjected to administrative sanctions for violation of the aforementioned Handbook provisions is of no moment in determining whether Beason had notice that his possession of a cell phone was in violation of federal law. The test is not whether Beason knew that cell phones were prohibited but rather, is "whether a person of ordinary intelligence would know the conduct was prohibited by federal criminal law, not by some other rule or regulation." Id. at 797 (Rendell, J., dissenting). Here, Beason's knowledge that he was not allowed to have the cell phone does not incline us to conclude that he therefore had fair notice that his actions would result in federal criminal penalties.

## III.

Accordingly, we reverse Beason's conviction because the statute, as applied to him, is void for vagueness.

REVERSED

10

WILKINSON, Circuit Judge, dissenting:

I would affirm the judgment based on the reasoning given by the district court, United States v. Beason, No. 1:10CR105, 2011 WL 399839 (N.D.W. Va. Feb. 1, 2011), and the Third Circuit in United States v. Blake, 288 F. App'x 791 (3d Cir. 2008). The practical effect of this whole matter, however, is limited. As the majority notes, Congress has since "amended the statute at hand [to] specifically make[] possession of a cell phone by federal inmates illegal." Ante at 5 (citing Pub. L. No. 111-225, § 2, 124 Stat. 2387 (codified at 18 U.S.C. § 1791)).