

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-28-2006

# USA v. Bobb

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5121

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Bobb" (2006). *2006 Decisions.* Paper 12.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/12

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-5121
_____

UNITED STATES OF AMERICA
v.

SHERMAN BOBB,
Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 03-0333-02)
District Judge:   Honorable James M. Munley
_____

Submitted Under Third Circuit LAR 34.1(a)
November 28, 2006

Before: RENDELL and AMBRO, <u>Circuit Judges</u>
PRATTER,* <u>District Judge</u>

(Filed:  December 28, 2006 )

_____

OPINION OF THE COURT
_____

_____

\* Honorable Gene E.K. Pratter, United States District Judge for the Eastern District
of Pennsylvania, sitting by designation.

PRATTER, *District Judge*

The federal government prosecuted Sherman Bobb, contending that he was a kingpin in a drug trafficking operation in Luzerne County, Pennsylvania. Following a seven-day trial, the jury convicted him of (1) conspiracy to distribute in excess of 5 kilograms of cocaine, in excess of 1.5 kilograms of cocaine base (crack) and ecstasy; (2) possession or use of a firearm in furtherance of a drug trafficking felony; and (3) possession with intent to distribute controlled substances. Mr. Bobb challenged the sufficiency of the Government's evidence at the close of the prosecution's case and renewed his motion at the close of all of the evidence. The District Court denied these defense motions, as well as Mr. Bobb's subsequent Rule 29 Motion for Judgment of Acquittal.

Mr. Bobb now raises four issues on appeal: (1) whether the evidence was sufficient to support a conviction on each of the three counts; (2) whether the District Court abused its discretion in admitting evidence of an assault by Mr. Bobb that had not been charged in the indictment; (3) whether the District Court abused its discretion or violated the Confrontation Clause by admitting certain out-of-court statements; and, finally, (4) whether the District Court abused its discretion by denying Mr. Bobb's requested jury instructions concerning testimony by accomplices and individuals who had entered into plea agreements. For the reasons discussed below, we will affirm the decision of the District Court.

**DISCUSSION**

2

A Rule 29 motion for judgment of acquittal obliges a district court to "'review the record in the light more favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'" United States v. Smith, 294 F.3d 473, 476 (3d Cir. 2002) (quoting United States v. Wolfe, 245 F.3d 257, 262 (3d Cir. 2001)).  This Court reviews grants or denials of Rule 29 motions de novo and independently applies the same standard as the District Court.

## I.     Sufficiency of the Evidence

When sufficiency of the evidence at trial is challenged, the Court must affirm if a rational trier of fact could have found the defendant guilty beyond a reasonable doubt and if the verdict is supported by substantial evidence.  United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995).  The prosecution may bear this burden entirely through circumstantial evidence.  United States v. Wexler, 838 F.2d 88, 90 (3d Cir. 1988).

### A.     Conspiracy to Distribute in Excess of 1.5 Kilograms of Crack Cocaine and in Excess of 5 Kilograms of Cocaine

Mr. Bobb was charged with conspiracy to distribute in excess of 1.5 kilograms of crack cocaine, in excess of 5 kilograms of cocaine, heroin[1] and ecstasy in violation of 21 U.S.C. § 846.  The essential elements of conspiracy are "(1) a shared 'unity of purpose,' (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal."  United States v. Mastrangelo, 172 F.3d 288, 292 (3d Cir. 1999).

---

[1] The jury did not convict Mr. Bobb on the heroin objective of the conspiracy.

Mr. Bobb argues that the evidence demonstrates, at most, various separate conspiracies rather than a single conspiracy with multiple objectives as alleged in Count 1 of the indictment.

The issue of whether a single conspiracy or multiple conspiracies exist is a fact question to be decided by a jury. United States v. Perez, 280 F.3d 318, 344 (3d Cir. 2002); United States v. Curran, 20 F.3d 560, 572 (3d Cir. 1994). Where a single conspiracy is alleged in the indictment, there is a variance if the evidence at trial proves only the existence of multiple conspiracies. Id.

Although its objectives may be numerous and diverse, a single conspiracy exists if there is one overall agreement among the parties to carry out those objectives. Braverman v. United States, 317 U.S. 49, 53-54 (1942). Thus, a single conspiracy is proved when there is "evidence of a large general scheme, and of aid given by some conspirators to others in aid of that scheme." United States v. Reyes, 930 F.2d 310, 312-13 (3d Cir. 1991). A single drug conspiracy "may involve numerous suppliers and distributors operating under the aegis of a common core group." United States v. Quintero, 38 F.3d 1317, 1337 (3d Cir. 1994). To establish a single conspiracy, the Government must demonstrate that the defendant "knew that he was part of a larger drug operation." Id.

For example, in Blumenthal v. United States, 332 U.S. 539 (1947), four defendants convicted of conspiring to sell whiskey at above-regulation prices argued on appeal that there was a variance between the single conspiracy charged in the indictment and the evidence presented. Id. at 541. Even though "each salesman aided in selling only his

4

part," the Supreme Court nonetheless held that the evidence established a single conspiracy, because each salesman "knew the lot to be sold was larger and thus that he was aiding in a larger plan." Id. By virtue of their separate agreements, the individual defendants "became parties to the larger common plan, joined together by their knowledge of its essential features and broad scope, though not of its exact limits, and by their common single goal." Id. at 558. Similarly, in Quintero, we held that a co-conspirator's testimony about his discussions with the defendant concerning the treatment of cocaine located in a different city demonstrated the defendant's awareness of the larger drug operation and, therefore, was sufficient to support the jury's finding of a single conspiracy. Quintero, 38 F.3d at 1337.

In the instant case, the Government presented evidence which, construed in its favor, demonstrated numerous purchases of controlled substances from Mr. Bobb by various individuals, and the distribution of drugs to various individuals for future sales. The evidence also included testimony by individuals who conspired with Mr. Bobb to distribute drugs. In particular, testimonial evidence indicated that Mr. Bobb provided drugs to his co-conspirators on credit over an extended period of time; that he relied on his co-conspirators to make trips to New York with him to replenish his supply of drugs; and that he trusted his co-conspirators to store drugs for him and to travel abroad to smuggle drugs.

Mr. Bobb has failed to demonstrate a variance between the single conspiracy charged in the indictment and the evidence presented at trial. Contrary to Mr. Bobb's

5

assertions, this is not a case where various individuals separately conspired with a common conspirator. Cf. Kotteakos v. United States, 328 U.S. 750, 771-74 (1946) (where various defendants separately conspired with a common conspirator, there was more than one conspiracy since there was no overall goal or common purpose). Even a cursory review of the testimony and evidence presented here indicates that a rational trier of fact could have found the existence of a single conspiracy that was pursued by various people undertaking various acts all to the same end. The evidence demonstrates that, like the salesmen in Blumenthal, each of the various individuals with whom Mr. Bobb arranged the sale and purchase of drugs knew "the lot to be sold was larger" and thus knew he or she was "aiding in a larger plan." The existence of an overall common purpose and the conspirators' knowledge of the larger operation suffice to prove that the various agreements and arrangements between Mr. Bobb and other individuals were part of a single conspiracy with multiple objectives, as charged in the indictment.

As to the amount of drugs, several witnesses testified as to the quantities of crack cocaine that Mr. Bobb possessed and distributed in furtherance of the conspiracy. Other circumstantial evidence presented by a number of witnesses supports an inference that Mr. Bobb indeed was aware of the approximately 7 kilograms of cocaine smuggled by his co-conspirators. Moreover, the jury specifically found that the conspiracy involved more than 5 kilograms of cocaine and 1.5 kilograms of crack cocaine.

**B.      Possession or Use of a Firearm in Furtherance of a Drug Trafficking**

**Felony**

The essential elements of a violation of 18 U.S.C. § 924(c) of which Mr. Bobb also was convicted are (1) the defendant committed either the crime of conspiracy to distribute and possess with intent to distribute a controlled substance or the crime of possession with intent to distribute; (2) the defendant knowingly possessed a firearm; and (3) the defendant knowingly possessed the firearm in furtherance of the crime of conspiracy to distribute or in furtherance of the crime of possession with intent to distribute.

To support a conviction under this statute, the Government must show that the firearm was possessed by the defendant to advance or promote criminal activity. United States v. Lawrence, 308 F.3d 623, 630 (3d Cir. 2002) ("Merely determining that the defendant was in possession of a sidearm is not enough to support the conviction; we must also consider whether the weapon was possessed 'in furtherance of . . . a drug trafficking crime.'"). In making this determination, the following nonexclusive factors are relevant:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

United States v. Sparrow, 371 F.3d 851, 853 (3d Cir. 2004) (quoting United States v. Ceballos-Torres, 218 F.3d 409, 414-15 (5th Cir. 2000)).

Mr. Bobb claims the trial evidence is insufficient to convict him of 18 U.S.C.

§ 924(c) because he argues that the evidence established that he did not actively solicit the barter of the sawed-off shotgun in question. In this Circuit, bartering crack cocaine for a gun is not a violation of 18 U.S.C. § 924(c)(1)(A) if the defendant did not actively solicit the barter of drugs for a gun. United States v. Sumler, 294 F.3d 579, 583 (3d Cir. 2002). At Mr. Bobb's trial, Melissa Rodriguez testified that she traded the shotgun for drugs after actively soliciting Mr. Bobb. According to Mr. Bobb, there was no testimony that Mr. Bobb solicited Ms. Rodriguez. In addition, argues Mr. Bobb, there was no evidence linking the gun to Mr. Bobb's drug trafficking crimes.

The evidence, however, is sufficient to find a nexus between the possession of the gun and the drug trafficking, and to satisfy many of the Ceballos-Torres factors. The jury specifically found that Mr. Bobb possessed and controlled the gun that was found loaded in an easily accessible location at the residence where Mr. Bobb stayed. The testimony also establishes that, during the time period when Mr. Bobb possessed the gun, he was involved in drug trafficking activities that generated thousands of dollars in proceeds and provoked at least one assault. In addition, at least three of Mr. Bobb's co-conspirators had been robbed of drugs and/or money, and at least one co-conspirator admitted that while distributing drugs with Mr. Bobb, he possessed several firearms to protect himself. Finally, the gun in question was an illegal, sawed-off shotgun, obtained in exchange for crack cocaine. Thus, a rational trier of fact could reasonably find that Mr. Bobb's possession of the firearm furthered, advanced or facilitated his drug trafficking activities.

C.    **Possession with Intent to Distribute Controlled Substances**

8

The essential elements of the substantive offense of possession of a controlled substance with intent to distribute are that the defendant (1) knowingly possessed a controlled substance with (2) the intent to distribute it. 21 U.S.C. § 841(a)(1). Possession can be actual or constructive, and may be proven through either direct or circumstantial evidence. United States v. Martorano, 709 F.2d 863, 866 (3d Cir. 1983). Constructive possession may be found if the defendant was knowingly in a position, or had the right, to exercise "dominion and control" over the drug. Id.

In the instant case, the police seized drugs from the residence of James Ford. Mr. Ford testified that Mr. Bobb had recruited him to store the drugs, that the drugs in the residence belonged to Mr. Bobb, and that Mr. Bobb distributed drugs from Mr. Ford's residence. Mr. Bobb now claims that there is no evidence of his ability to control what was inside Mr. Ford's residence. Viewed in the light most favorable to the Government, however, Mr. Ford's testimony is sufficient to support a finding of Mr. Bobb's guilt beyond a reasonable doubt on each of the elements, including his constructive possession of the drugs.

## II.    Admitting Evidence of an Assault Not Charged in the Indictment

The Court reviews the District Court's decision to admit or exclude evidence for abuse of discretion. United States v. Retos, 25 F.3d 1220, 1227 (3d Cir. 1994). However, to the extent the District Court's admission of evidence was based on an interpretation of the Federal Rules of Evidence, the standard of review is plenary. Mr. Bobb appeals the District Court's admission of evidence of Mr. Bobb's assault of one Nicholas Williams,

9

an act that was not charged in the indictment.

"Rule 404(b), which proscribes the admission of evidence of other crimes when offered to prove bad character, does not apply to evidence of uncharged offenses committed by a defendant when those acts are intrinsic to the proof of the charged offense." United States v. Gibbs, 190 F.3d 188, 217 (3d Cir. 1999) (holding that defendant's participation in uncharged acts of violence was admissible as direct proof of the conspiracy with which he was charged). Even if such proof is "extremely prejudicial to the defendant," the trial court "would have no discretion to exclude it because it is proof of the ultimate issue in the case." Id. at 217-18 (quoting 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5239, at 450-451 (1978)).

In the instant case, the indictment specifically alleged that Mr. Bobb was an "organizer and leader" of the conspiracy charged in Count 1 of the indictment. The Government contends that evidence of the assault on Mr. Williams, a drug user who was an admitted participant in the conspiracy, was probative of this allegation. At trial, Mr. Bobb objected to this evidence as being uncharged misconduct "totally unrelated to what Mr. Bobb is on trial for." Mr. Bobb now argues on appeal that the District Court admitted the evidence of the assault without engaging in the balancing of probative value and prejudice required under Rules 403 and 404.

Under either objection, we conclude that the District Court properly admitted evidence of the assault. Mr. Bobb was charged with conspiring to distribute crack and

10

cocaine. The assault and circumstances surrounding the assault (which was supposedly prompted by missing crack that Mr. Bobb believed Mr. Williams had taken) are direct evidence of Mr. Bobb's participation in and enforcement of the conspiracy in a leadership role, and, as such, this evidence was properly admitted.

## III. Admitting Evidence of Hearsay Statements

The same standards apply to the Court's consideration of Mr. Bobb's challenge to the District Court's admission of co-conspirators' statements.

### A. Application of Federal Rule of Evidence 801(d)(2)(E)

Under Rule 801(d)(2)(E), the out-of-court statements of a defendant's co-conspirators are not excluded as hearsay. Before any such statement may be admitted, however, the proponent must establish by a preponderance of the evidence that (1) the conspiracy existed; (2) both the defendant and the declarant were members of the conspiracy; and (3) the statement was made in the course of the conspiracy and in furtherance of the conspiracy. United States v. McGlory, 968 F.2d 309, 333 (3d Cir. 1996). In determining whether the statement is admissible as a statement of a co-conspirator, the court may consider the statement itself. Bourjaily v. United States, 483 U.S. 171, 181 (1987). While a casual conversation between co-conspirators does not meet the "in furtherance" requirement, "statements between co-conspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy further the ends of the conspiracy and are admissible so long as the other requirements of Rule 801(d)(2)(E) are met." United

11

States v. Ammar, 714 F.2d 238, 252 (3d Cir. 1983).

Mr. Bobb specifically objects to statements admitted during the trial testimony of Julie Gyle, Melissa Rodriguez, Amy Sims and Danielle Lee. The declarants included Mr. Bobb, co-conspirators and non-conspirators, whose statements ostensibly were offered to give context and not for their truth. Mr. Bobb contends that the Government failed to satisfy the foundation requirements for the co-conspirator statements.

The co-conspirator statements presented during the testimony of Julie Gyle, Melissa Rodriguez and Danielle Lee concerned, respectively, the amount of money Ms. Gyle was told she would receive for her drug sales, the quantity of crack members of the conspiracy had available for distribution, and the quantity of crack cocaine in Ms. Lee's false bottom suitcase. These statements were all made by undisputed co-conspirators in the course of the conspiracy and in furtherance of the conspiracy and thus are admissible under FRE 801(d)(2)(E).

Mr. Bobb also objected to the admission of certain surreptitiously recorded conversations played during the testimony of Amy Sims on the ground that there was insufficient evidence to establish that Ms. Sims, Mr. Bobb and the declarant were members of the conspiracy. The District Court, however, found the evidence sufficient to meet the foundational requirements, and we agree that the evidence amply supports this conclusion.

**B.     The Confrontation Clause**

Mr. Bobb further contends that the recorded statements, even if not offered for

12

their truth, violated his rights under the Confrontation Clause.

During the pendency of Mr. Bobb's trial, this Court held in <u>United States v. Hendricks</u>, 395 F.3d 173 (3d Cir. 2005), that surreptitiously monitored conversations and statements are not "testimonial" for purposes of <u>Crawford v. Washington</u>. <u>Id.</u> at 181. Specifically, with regard to recorded statements of co-conspirators, we held that "party admissions and co-conspirator portions" of disputed tape recordings are "nontestimonial and thus, assuming compliance with the Federal Rules of Evidence, are admissible." <u>Id.</u> at 183-84. We further noted that the Confrontation Clause "'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" <u>Id.</u> at 183 (<u>citing</u> <u>United States v. Crawford</u>, 541 U.S. 36, 59 n.9 (2004)); <u>see also</u> <u>United States v. Trala</u>, 386 F.3d 536, 544-45 (3d Cir. 2004) (finding no Confrontation Clause violation where reliability of out-of-court statements was not at issue and where the statements were not introduced for their truth).

Mr. Bobb urges that <u>Hendricks</u> be confined to its specific facts and also attempts to distinguish <u>Hendricks</u> because the declarant in <u>Hendricks</u> was a confidential informant. However, the holding in <u>Hendricks</u> did not turn on its own unique facts and did not rest on the status of the declarant; rather, its focus was on the non-testimonial nature of surreptitiously recorded conversations and the purpose for which they are offered. Here, the out-of-court statements were surreptitiously recorded and either were made by co-conspirators or, if made by non-conspirators, were offered for the purpose of establishing context, not for their truth. Thus, under <u>Hendricks</u>, the admission of the

13

recorded statements in Mr. Bobb's trial did not violate the Confrontation Clause.

In sum, the District Court did not abuse its discretion in admitting the disputed hearsay statements.

## IV.    Jury Instructions

With regard to issues of both phrasing and omissions, the Court reviews a trial court's jury instructions for abuse of discretion. United States v. Zehrbach, 47 F.3d 1252, 1260 (3d Cir. 1995). In reviewing a refusal to give a requested jury instruction, the Court evaluates "whether the preferred instruction was legally correct, whether or not it was substantially covered by other instructions, and whether its omission prejudiced the defendant." United States v. Pitt, 193 F.3d 751, 755-56 (3d Cir. 1999). A trial court is not obligated to instruct the jury using the precise words suggested by counsel. United States v. Turley, 891 F.2d 57, 62 (3d Cir. 1989).

### A.    Requested Jury Instruction Number 5

With regard to requested jury instruction No. 5, Mr. Bobb contends he was prejudiced by the District Court's refusal to instruct the jury that "accomplices are corrupt and polluted sources." Mr. Bobb argues that the language actually used by the District Court did not convey the "true nature" of the sources used by the Government. However, Mr. Bobb failed to object to the trial court's accomplice testimony instruction at trial, and thus he waived this claim. Therefore, it is now subject to review for plain error. United States v. Guadalupe, 402 F.3d 409, 410 n.1 (3d Cir. 2005). Under the plain error standard, "'before an appellate court can correct an error not raised at trial, there must be

14

(1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" United States v. Vazquez, 271 F.3d 93, 99 (3d Cir. 2001) (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)).

The District Court's instruction advised the jury that the accomplice testimony "must be scrutinized with great care and viewed with particular caution." In particular, the District Court advised the jury: "You should ask yourselves whether or not the so-called accomplices would benefit more by lying or telling the truth. Was their testimony made-up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely?"

We have specifically long held that there is "[n]o mandatory requirement that accomplice testimony be described as emanating from a corrupt or polluted source." United States v. DeLarosa, 450 F.2d 1057, 1061 (3d Cir. 1971). Accordingly, the District Court did not plainly err in omitting the specific language requested by Mr. Bobb, and the instruction adequately expressed the nature of accomplice testimony.

## B. Requested Jury Instruction Number 8

With regard to requested jury instruction No. 8, Mr. Bobb contends that he was prejudiced by the District Court's refusal to include, concerning the credibility of cooperating witnesses who had entered into plea agreements, an instruction that even a mandatory minimum sentence may be reduced upon motion by the Government. The

15

Government responds that (1) none of the witnesses who entered into cooperation plea agreements pleaded guilty to a charge carrying a mandatory minimum sentence; and (2) the trial evidence, including the cross-examination of the witnesses, made clear to the jury that the cooperating witnesses had the possibility of receiving sentencing departure motions and what that meant. In addition, the plea agreement of each cooperating witness was admitted in evidence at trial, thus providing the jury with the complete terms of the various agreements. The District Court's instructions also included general instructions on the credibility of witnesses who might have something to gain from their testimony.

The jury had ample evidence of the witnesses' plea agreements and the possible significance of those agreements. The jury was instructed to take the witnesses' interests, motivation and credibility into consideration. We find that Mr. Bobb was not prejudiced and the District Court did not abuse its discretion in omitting the requested instruction.

**CONCLUSION**

The evidence presented at Mr. Bobb's trial was sufficient to support a conviction of (1) conspiracy to distribute in excess of 5 kilograms of cocaine, in excess of 1.5 kilograms of cocaine base (crack) and ecstasy; (2) possession or use of a firearm in furtherance of a drug trafficking felony; and (3) possession with intent to distribute controlled substances. The District Court properly admitted evidence of the assault not charged in the indictment, as well as the statements of co-conspirators and non-conspirators. And, finally, the District Court did not err by denying Mr. Bobb's requested jury instructions. Therefore, we will affirm the judgment of conviction on each

16

of the three counts.

_____