**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4165
_____

UNITED STATES OF AMERICA

v.

WILLIAM JACKSON,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 09-cr-00475-001)
District Judge:  Hon. Norma L. Shapiro

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 10, 2014

Before:  CHAGARES, SHWARTZ, and ALDISERT, <u>Circuit Judges</u>.

(Filed: July 31, 2014)
_____

OPINION
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

        A jury found William Jackson guilty of possession of cocaine base with intent to

distribute in violation of 21 U.S.C. § 841(a)(1), carrying a firearm in relation to a drug

offense in violation of 18 U.S.C. § 924(c)(1), possession of marijuana in violation of 21

U.S.C. § 844(a), and felon in possession of a firearm in violation of 18 U.S.C. §

922(g)(1). Jackson challenges his conviction on several grounds, arguing that: (1) the District Court erred in denying his motion to suppress physical evidence; (2) the evidence was insufficient to establish that Jackson possessed narcotics with the intent to distribute or that he possessed a firearm in connection with a drug offense; and (3) the evidence was insufficient to establish the interstate commerce element of the offense of felon in possession of a firearm. For the reasons that follow, we will affirm Jackson's conviction on all counts.

I.

We write solely for the parties and therefore recite only the facts that are necessary to our disposition.

On December 7, 2006, at approximately 11:08 p.m., Philadelphia Police Officers Randy Cole and Gerald Logan reported to Kellis, a bar in Philadelphia, in response to a radio call relaying an anonymous informant's tip regarding a black male wearing a black Adidas hooded sweatshirt and fatigue pants and possessing a gun. Upon entering the bar, the officers noticed Jackson, who was seated at the bar and was wearing a black Adidas hooded sweatshirt and blue jeans. The officers approached Jackson and asked him if he would accompany them to the back of the bar to talk, and Jackson agreed to do so. He walked to the rear of the bar with Officer Logan beside him and Officer Cole directly behind him. Officer Logan testified that, while walking to the back of the bar, he placed his hand on Jackson's shoulder. Officer Cole testified that he may have placed his hand on Jackson's back. Both officers testified that the touching was brief and intended to guide Jackson through the crowd towards the back of the bar.

2

At some point after Officer Cole touched Jackson's back, Jackson informed him that he was carrying a firearm. Officer Cole was unable to recall whether this admission occurred while his hand was still on Jackson's back. When the officers and Jackson reached the back of the bar, Officer Cole ordered Jackson to place his hands on the wall. Officer Cole seized Jackson's firearm, handcuffed him, and placed him under arrest.

Outside the bar, Officer Logan searched Jackson and recovered forty-two small ziplock baggies containing crack cocaine from his sweatshirt pocket. Officer Logan also recovered a glass jar containing marijuana from Jackson's sweatshirt pocket. Officer Logan did not find any drug paraphernalia on Jackson.

Before trial, Jackson moved to suppress his statement that he possessed a firearm, as well as the firearm, the ziplock baggies of crack, and the glass jar of marijuana. Jackson argued that the evidence must be suppressed because he was seized in violation of his Fourth Amendment rights. The District Court denied Jackson's motion. See Appendix ("App.") 2-7. After a three-day trial, a jury convicted Jackson on all counts. Jackson moved for acquittal and arrest of judgment or, in the alternative, a new trial, arguing that the denial of the motion of suppress was in error and the evidence underlying his convictions was insufficient. The District Court denied the motion. See App. 9-21. On November 1, 2012, the District Court sentenced Jackson to 101 months of imprisonment and five years of supervised release. Jackson filed a timely appeal.

II.[1]

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

We review a District Court's denial of a motion to suppress for "clear error as to the underlying factual findings and exercise[] plenary review of the District Court's application of the law to those facts." United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002) (citations omitted).

"Sufficiency of the evidence is a question of law, subject to plenary review." United States v. Moyer, 674 F.3d 192, 206 (3d Cir. 2012). A defendant claiming insufficient evidence bears a heavy burden; this Court will overturn a verdict "only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt." United States v. Riley, 621 F.3d 312, 329 (3d Cir. 2010) (quotation marks omitted). In making this determination, "we must view the evidence in the light most favorable to the Government." Id. (quotation marks omitted). Ultimately, the verdict "must be upheld as long as it does not 'fall below the threshold of bare rationality.'" United States v. Caraballo-Rodriguez, 726 F.3d 418, 431 (3d Cir. 2013) (en banc) (quoting Coleman v. Johnson, 132 S.Ct. 2060, 2065 (2012)).

III.

A.

Jackson first argues that the District Court erred in denying his motion to suppress physical evidence. Specifically, he asserts that Officers Cole and Logan had already seized him, in violation of his Fourth Amendment rights, when he told them he was carrying a handgun.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,

4

shall not be violated." U.S. Const. amend. IV. Evidence discovered during or pursuant to an unreasonable search and seizure is inadmissible at trial as "fruit of the poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 487-88 (1963). Accordingly, we must determine whether Jackson was seized before he informed Officers Cole and Logan that he possessed a firearm.[2]

"A seizure occurs when there is either (a) a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful, or (b) submission to a show of authority." United States v. Brown, 448 F.3d 239, 245 (3d Cir. 2006) (quotations omitted). The test for "existence of a show of authority is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." Id. (quotations omitted). A seizure does not occur, however, "simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual . . . . The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." Florida v. Bostick, 501 U.S. 429, 434 (1991) (citations omitted); see also United States v. Mendenhall, 446 U.S. 544, 554 (1980). In Mendenhall, the Supreme Court provided a non-exhaustive list of examples of "circumstances that might indicate a seizure," including "the threatening

---

[2] The District Court found that the anonymous tip provided to Officers Cole and Logan over the radio did not contain the "indicia of reliability" necessary to make a seizure reasonable under Terry v. Ohio, 392 U.S. 1 (1968). App. 4. The parties do not dispute this holding.

presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." 446 U.S. at 554. Jackson asserts that the facts that the officers approached him, asked him to go to the back of the bar, and placed their hands on his back and shoulders indicate that he was seized by the officers before he stated that he had a handgun, such that any physical evidence obtained after this seizure is inadmissible.

An analysis of the facts demonstrate that Jackson's argument is without merit. The District Court found, and Jackson does not dispute, that the officers placed their hands on Jackson's shoulder and back only after he had already agreed to accompany them to the back of the bar. The initial encounter, accordingly, was consensual. The District Court further found, and this Court agrees, that, as the bar was crowded, the touching could reasonably be seen as an attempt to communicate with and guide Jackson in a noisy environment. There is no indication in the record that Jackson attempted to flee, or that the officers attempted to restrain him in any way. Merely placing a hand on Jackson's shoulder and back to guide him through a crowded bar, without more, is insufficient to shift the nature of the interaction from consensual to involuntary.

In addition, taking into consideration the Mendenhall factors, the evidence reflects that the two officers were the only officers present, that they did not brandish weapons, and that they did not use language or a tone of voice indicating that Jackson's compliance might be compelled. See id.

6

Although Jackson asserts that no reasonable person would feel free to ignore a request from police officers, the Supreme Court has stated that "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." INS v. Delgado, 466 U.S. 210, 216 (1984). To hold otherwise would threaten the ability of law enforcement officials to approach people and ask questions in the course of their duties.

Accordingly, we hold that it was not error for the District Court to deny Jackson's motion to suppress physical evidence.[3]

### B.

Next, Jackson argues that the evidence was insufficient to establish that (1) Jackson possessed cocaine base with the intent to distribute, and (2) Jackson possessed a firearm in relation to a drug offense.

### 1.

In order to prove possession with intent to distribute, the Government must prove beyond a reasonable doubt that a defendant: (1) possessed a controlled substance; (2) knew that the substance he possessed was a controlled substance; and (3) intended to distribute the controlled substance. See United States v. Kim, 27 F.3d 947, 959 (3d Cir.

---

[3] Jackson cites several cases for the proposition that he was seized when the officers asked him to accompany them to the back of the bar and placed their hands on his shoulder and back. See Jackson Br. 21-22. However, in each of the cited cases, the officers acted in an attempt to restrict the defendants' movements. Here, the officers did not attempt to restrict Jackson's movement; indeed, they had no reason to do so, as Jackson consented to accompany them to the back of the bar.

1994).  The Government may prove both possession and intent to distribute through circumstantial evidence.  United States v. Johnson, 302 F.3d 139, 149 (3d Cir. 2002).

Officer Logan found 42 individually bagged packets of crack cocaine on Jackson. Detective Chris Marano, the Government's expert, testified that, in his experience as an undercover narcotics officer, the possession of 42 packets of crack cocaine is consistent with an intent to distribute.  He testified that individual users of crack only carry up to nine packets at once, and more than that would put the user at risk of being robbed. Detective Marano also testified that individual users could obtain more crack for a cheaper price by purchasing it in bulk, rather than in individual packets.

Officers Cole and Logan testified that they did not find any paraphernalia for personal use when they searched Jackson, although Officer Cole admitted it would be "possible" to use the glass jar to vaporize crack.  However, the jar did not have burn marks on it.  Detective Marano testified that a jar with no charred ends containing marijuana could, but likely would not be, used as a crack pipe, because the user would burn his or her fingers when the glass heats.  Detective Marano also testified that Jackson's possession of an expensive firearm was consistent with a finding that he was a distributor, not a personal user.

Jackson points out that the officers did not observe him selling crack and did not conduct any controlled buys.  He also notes that the officers found no money on him, and one would expect to find money on a drug distributor.  However, viewing the record as a whole in the light most favorable to the Government, this evidence is more than sufficient

8

to support Jackson's guilty verdict on possession of crack cocaine with intent to distribute.

2.

To sustain a conviction under 18 U.S.C. § 924(c)(1), the Government must prove beyond a reasonable doubt that, in addition to possession with intent to distribute, Jackson knowingly carried a firearm during and in relation to drug trafficking activity. United States v. Bobb, 471 F.3d 491, 496 (3d Cir. 2006). Jackson does not dispute that he carried a firearm, but maintains that the evidence was insufficient for a reasonable jury to find that he carried it during and in relation to a drug offense.

The mere presence of a firearm is insufficient to sustain a conviction under 18 U.S.C. § 924(c)(1). United States v. Sparrow, 371 F.3d 851, 853 (3d Cir. 2004). Rather, the Government "must show that the firearm was possessed by the defendant to advance or promote criminal activity." Bobb, 471 F.3d at 496. In making this determination, relevant, nonexclusive factors to consider include "'the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.'" Sparrow, 371 F.3d at 853 (quoting United States v. Ceballos-Torres, 218 F.3d 409, 414-15 (5th Cir. 2000)).

The officers found a loaded gun on Jackson, who was also in possession of marijuana and a substantial amount of crack cocaine at the time. Accordingly, the gun was in close proximity to the drugs, and was easily accessible to Jackson. Detective

9

Marano testified that the gun was a Desert Eagle 45, a "nice gun" that would go for $1,000 on the street. App. 122. He also testified that "[g]uns and drugs go together." App. 148. In addition, Jackson's possession of the firearm was illegal, as he had previously been convicted of a felony. This evidence is sufficient to sustain Jackson's conviction under 18 U.S.C. § 924(c)(1).

## C.

Finally, Jackson argues that the evidence was insufficient to establish the interstate commerce element of 18 U.S.C. § 922(g)(1), felon in possession of a firearm. 18 U.S.C. § 922(g)(1) provides that persons who have been convicted of crimes punishable by imprisonment for over one year cannot, among other things, "receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

It is undisputed that the firearm possessed by Jackson was manufactured in Israel and imported into Minnesota, and, accordingly, has traveled in foreign and interstate commerce. Although Jackson argues that this is insufficient to prove the interstate commerce element of 18 U.S.C. § 922(g)(1), he acknowledges that this Court rejected that argument in United States v. Singletary, 268 F.3d 196 (3d Cir. 2001). In Singletary, we held that proof that a "gun had traveled in interstate commerce, at some time in the past, was sufficient to satisfy the interstate commerce element" of 18 U.S.C. § 922(g)(1). Id. at 205. We are, accordingly, bound by this Court's precedent to find that the evidence was sufficient to satisfy the interstate commerce element here, and Jackson raises this argument only to preserve it for purposes of appeal.

## IV.

For the foregoing reasons, we will affirm the District Court's judgment of conviction.