**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3438
_____

UNITED STATES OF AMERICA

v.

SHERMAN KEMP
A/K/A Goose
A/K/A Hoseay Sachez
A/K/A Lil Dog,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-07-cr-00549-011)
District Judge:  Hon. J. Curtis Joyner

Argued: May 23, 2014

Before:  McKEE, <u>Chief Judge</u>, CHAGARES, <u>Circuit Judge</u>, and THOMPSON, <u>District
Judge</u>[*]

(Filed: October 17, 2014)

Paul M. George, Esq**. [ARGUED]**
239 South Camac Street
Philadelphia, PA 19107
        *Attorney for Appellant*

_____

[*] The Honorable Anne E. Thompson, United States District Judge for the District of New
Jersey, sitting by designation.

Linwood C. Wright, Jr. **[ARGUED]**
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
      *Attorney for Appellee*


———————

OPINION

———————


CHAGARES, <u>Circuit</u> <u>Judge</u>.

Sherman Kemp was convicted by a jury of conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. He now appeals his conviction and sentence. For the reasons that follow, we will affirm the judgment of the District Court.

I.

We write exclusively for the parties and therefore set forth only those facts that are necessary to our disposition. On September 12, 2007, a grand jury charged Kemp with conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. In the same indictment, eight codefendants were charged with numerous other counts. On January 23, 2008, the grand jury returned a superseding indictment, which added two defendants and notices of forfeiture, but otherwise did not alter the original indictment. All of the defendants pleaded guilty except for Kemp, Maurice Phillips, and David Garcia, who proceeded to a joint trial.

The evidence at trial showed that, from 1998 through 2007, Phillips controlled a cocaine distribution network (the "Phillips Cocaine Organization" or "PCO") with outlets

2

in, among other places, the Philadelphia metropolitan area, Newark, New Jersey, Washington, D.C., New York, and Virginia. In the late 1990s, Stanley Wagner and Anthony Ballard managed the PCO's cocaine distribution operation in Maryland. Kemp worked directly for them and thus by extension for Phillips. Mark Harris also distributed cocaine for Phillips in Maryland, and Phillips delivered cocaine to him through Samuel McQueen. After Wagner and Ballard were incarcerated, Phillips provided cocaine to Kemp through Harris. Eventually, Phillips started to deal directly with Kemp. At that point, McQueen also started delivering cocaine to Kemp. Kemp acted as the PCO's cocaine distributor in the Baltimore area throughout 2002.

The evidence further established that Kemp enlisted the help of Baltimore resident Sharon Drake, who let him use her residence as a "stash house" for PCO drugs and money. In September 2002, Baltimore police officers followed Kemp to the stash house based on information received from a confidential informant. Kemp drove off, and when officers attempted to stop his car, he repeatedly rammed a police car and fled at high speed. Officers subsequently searched Drake's residence and recovered, among other things, approximately 2.5 kilograms of cocaine and a digital scale containing cocaine residue. In 2003, Kemp delivered money to Chanell Cunningham, a lieutenant in the PCO, who testified that she collected as much as $40,000 to $80,000 per trip. In the spring of 2004, Ballard was released from prison, and Phillips once again put him in charge of the Maryland distribution network. Sometime in 2005, Kemp left the PCO.

After a lengthy trial, the jury found all three defendants, including Kemp, guilty of the charged offenses. Kemp's sentencing hearing was scheduled for August 11, 2010.

On August 9, 2010, Kemp filed a motion for a new trial on the basis of newly discovered evidence. The District Court denied this motion and imposed sentence on August 11, 2010. The court sentenced Kemp to 30 years of imprisonment, to run concurrently with a sentence imposed by a federal court in Maryland. The court also imposed a ten-year period of supervised release and ordered Kemp to pay a fine of $5,000 and special assessment of $100. Kemp filed a timely notice of appeal.

II.[1]

Kemp argues that the evidence was insufficient to establish that he participated in the PCO conspiracy. He also asserts that the District Court erred by: (1) allowing the Government to introduce certain evidence; (2) miscalculating his sentence; and (3) denying his motion for a new trial based on newly discovered evidence. We will address each argument in turn.

A.

We apply a "particularly deferential standard of review" to challenges to the sufficiency of the evidence supporting a conviction. United States v. Powell, 693 F.3d 398, 401 n.6 (3d Cir. 2012). "We view all evidence in the light most favorable to the government, and sustain conviction as long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quotation marks omitted).

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We note the standards of review with regard to each claim below.

The essential elements of a drug conspiracy are: (1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal. United States v. Iglesias, 535 F.3d 150, 156 (3d Cir. 2008). In determining whether a defendant was a member of a drug conspiracy, we may consider how long the defendant was affiliated with members of the conspiracy, whether there is an established method of payment in the transactions, whether the transactions are standardized in other ways, and whether there is a demonstrated level of mutual trust. United States v. Gibbs, 190 F.3d 188, 199 (3d Cir. 1999).

Kemp argues that that the Government failed to prove that he was linked to Phillips and the PCO conspiracy.[2] The record reflects, however, that Kemp participated in the PCO's distribution activities. The Government presented evidence, including testimony from co-conspirators, showing that: (1) Kemp was the PCO distributor in the Baltimore area, first working for Ballard and Wagner and later assuming responsibility for that area himself; (2) he received PCO cocaine from Harris and McQueen; (3) he at times coordinated with Harris; and (4) he attended PCO social events that were attended by other distributors for the PCO. See Supplemental Appendix ("Supp. App.") 161-62; 287-88; 519-20. The Government established that Kemp was not just a buyer of PCO cocaine with no stake in the operation, but an active and long-term participant. Thus, a rational trier of fact could have found the essential elements of a drug conspiracy beyond a reasonable doubt.

B.

---

[2] Kemp does not challenge the District Court's finding that a conspiracy existed.

5

Kemp challenges the District Court's admission of two sets of evidence. "We review a district court's decision to admit or exclude evidence for abuse of discretion," and "our review is plenary as to [its] interpretation of the Federal Rules of Evidence." Marra v. Phila. Hous. Auth., 497 F.3d 286, 297 (3d Cir. 2007).

First, Kemp challenges the District Court's admission of: (1) the testimony of Cunningham regarding statements made by Phillips about Kemp; (2) the testimony of Harris regarding a statement made by McQueen about Kemp; and (3) letters to Phillips from Wagner and Ballard which refer to Kemp.[3] Federal Rule of Evidence 801(d)(2)(E) provides that a co-conspirator statement is not hearsay, and thus generally admissible, when made "during the course and in furtherance of the conspiracy." In order for this rule to apply, the District Court must find, by a preponderance of the evidence, that: (1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy. United States v. McGlory, 968 F.2d 309, 333 (3d Cir. 1992). Where a district court finds that a conspiracy existed, we review the court's findings as to these elements for clear error. United States v. Vega, 285 F.3d 256, 265 (2002). "Clear error exists when giving all due deference to the opportunity of the trial judge to evaluate the credibility of witnesses and to weigh the evidence, we are left with a definite and firm conviction that [a] mistake has

---

[3] Cunningham testified that Phillips told her he was dealing directly with Kemp. Supp. App. 507-09. Harris testified that Phillips told McQueen to deliver to Kemp 10 kilograms of cocaine that was intended for Harris. Supp. App. 856. The letters discussed, among other things, the obligation of non-incarcerated members of the PCO to provide financially for incarcerated members of the PCO. Supp. App. 3420-34.

been committed." Commerce Nat'l. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 435 n.1 (3d Cir. 2000).

Here, there was sufficient evidence of Kemp's and his co-conspirators' participation in the PCO conspiracy. Furthermore, all of the statements at issue were made during the course of and in furtherance of the conspiracy, as they were meant to keep co-conspirators informed about the status and progress of the scheme. Accordingly, the District Court did not err in admitting this evidence under Rule 801(d)(2)(E).[4]

Second, Kemp contends that the District Court erred in allowing the Government to introduce portions of a video tape over his counsel's objection. In the video, Kemp stated, among other things, that: (1) his watch was worth over $100,000; (2) he has a lot of money; (3) he deals with tractor-trailers rather than cars; and (4) money is not valuable to him unless it comes "street money, blood money, money in rubber bands" and goes by tractor-trailer west or south. Supp. App. 3380-82. The District Court denied Kemp's motion in limine to exclude the video clips and allowed into evidence all but one because it deemed the clips relevant.

Federal Rule of Evidence 403 provides that a district court may exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

---

[4] Kemp also argues that statements of co-conspirators are presumptively unreliable. This argument fails, as it merely attacks the hearsay exception itself. As the Supreme Court has noted, the exception is based on the notion that out-of-court statements by co-conspirators are "just as reliable as in-court testimony." Crawford v. Washington, 541 U.S. 36, 74 (2004). Hence, we have held that co-conspirator statements do not pose a Confrontation Clause problem. United States v. Bobb, 471 F.3d 491, 499 (3d Cir. 2006).

7

wasting time, or needlessly presenting cumulative evidence." This rule "creates a presumption of admissibility." United States v. Cross, 308 F.3d 308, 323 (3d Cir. 2002). "Unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note. Thus, our "focus must be on unfairness in the sense that the proponent would secure an advantage that results from the likelihood the evidence would persuade by illegitimate means." United States v. Blyden, 964 F.2d 1375, 1378 (3d Cir. 1992).

We hold that the District Court did not abuse its discretion here. In the video, Kemp discussed transport by tractor-trailer, the method used by the PCO to distribute cocaine and money. This evidence was relevant in linking Kemp to the conspiracy. Moreover, Kemp's display of excessive wealth was probative of his involvement with a large drug trafficking operation such as the PCO. This probative value was not outweighed by any undue prejudice to Kemp. Thus, the District Court did not err in admitting this evidence.

C.

Next, Kemp claims that the District Court erred during sentencing by determining that: (1) he was responsible for at least 150 kilograms of cocaine; and (2) he had a managerial role in the conspiracy. We review the District Court's factual findings in sentencing for clear error. See United States v. Hunter, 52 F.3d 489, 492 (3d Cir. 1995).

The District Court applied a base offense level of 38 because it determined that Kemp was responsible for distributing at least 150 kilograms of cocaine. This finding is supported by the record. For example, the record reflects that from 2000 to 2002, Harris

8

provided four to five kilograms of cocaine to Kemp every other week, and thereafter,

Phillips provided cocaine directly to Kemp. Supp. App. at 854. Therefore, the District

Court did not err in making this finding.[5]

The District Court also applied a three-level sentence enhancement under U.S.S.G.

§ 3B1.1(b), which provides: "If the defendant was a manager or supervisor (but not an

organizer or leader) and the criminal activity involved five or more participants or was

otherwise extensive, increase by 3 levels." We have held that "to be a supervisor, there

must be some degree of control over others involved in the commission of the offense."

United States v. DeGiovanni, 104 F.3d 43, 46 (3d Cir. 1997) (emphasis omitted).

Here, the evidence showed that, after the incarceration of Wagner and Ballard,

Kemp managed the PCO's cocaine distribution in Baltimore. In doing so, he supervised

Sharon Drake, paying her so that he could use her home as a stash house for PCO drugs

and money, and directing her to retrieve and deliver drugs and to count money for him.

Supp. App. 1095-98. The record also reflects that, after the stash house was searched on

September 11, 2002, Kemp directed Drake to make false statements to a lawyer and law

enforcement, and paid her to go on a vacation so that she would not testify against him.

Supp. App. 1100-02. Accordingly, the District Court did not err in finding that Kemp

had a managerial role in the PCO conspiracy.

---

[5] Moreover, we have held that a defendant may be held responsible for the quantity of drugs distributed by his co-conspirators if the drugs distributed were: (1) in furtherance of the jointly-undertaken activity; (2) within the scope of the defendant's agreement; and (3) reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake. United States v. Collado, 975 F.2d 985, 995 (3d Cir. 2000). Here, there was ample evidence to establish Kemp's involvement in and awareness of the PCO and its distribution activities.

9

D.

Lastly, we will review the District Court's denial of Kemp's motion for a new trial based on new evidence. In his motion, Kemp argued that the Government withheld evidence impeaching cooperating witness Lamont Smith, who testified at trial about his involvement in the PCO. Kemp cites the testimony of several witnesses at another trial (the 2005 trial of Kaboni Savage, the leader of another drug trafficking organization), who stated that Smith participated in robberies of drug dealers' homes.

Ordinarily, we review the denial of a motion for new trial on the basis of newly discovered evidence for abuse of discretion. United States v. Pelullo, 14 F.3d 881, 886 (3d Cir. 1994). Because Brady claims present questions of law and fact, however, we will conduct a de novo review of the District Court's conclusions of law and review its findings of fact for clear error. Id.

In Brady v. Maryland, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." 373 U.S. 83, 87 (1963). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. Id. (quotation marks omitted). Impeachment evidence, like exculpatory evidence, falls within the Brady rule. See Giglio v. United States, 405 U.S. 150, 154(1972).

10

Under <u>Brady</u>, Kemp's argument is unavailing. First, the Government did not actually suppress the impeachment evidence. The record reflects that the Government provided defense counsel with the relevant information about Smith through FBI reports during pretrial discovery.[6] Defense counsel also could have obtained transcripts of the testimony at the Savage trial, as these transcripts were a matter of public record. <u>See</u> <u>United States v. Starusko</u>, 729 F.2d 256, 262 (3d Cir. 1984) ("[T]he government is not obliged under <u>Brady</u> to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself . . . ."). Second, this evidence was not material. As we already noted, the Government presented significant evidence in addition to the Smith testimony from which a rational factfinder could have convicted Kemp of conspiracy beyond a reasonable doubt.

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[6] At the hearing on Kemp's motion, defense counsel acknowledged that he had received the FBI reports regarding Smith's history, but he did not review the reports because they did not have a "red sticker" and were "sort of a needle buried in the haystack." Supp. App. at 3541-42.

11