NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4051
_____

UNITED STATES OF AMERICA

v.

ANGEL DUPREY,
                           Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court Criminal No. 2-11-cr-00434-054)
District Judge:  Honorable Berle M. Schiller

Submitted Under Third Circuit LAR 34.1(a)
September 9, 2015

BEFORE:  VANASKIE, NYGAARD, and RENDELL, *Circuit Judges*

(Filed: June 15, 2016)

_____

OPINION*
_____

NYGAARD, *Circuit Judge.*

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Angel Duprey contends that there is insufficient evidence to support his conviction under 21 U.S.C. § 846, 841(a)(1), (b)(1)(C). He also asserts that the District Court made numerous errors regarding his sentence. This opinion does not have any precedential value. Therefore our discussion of the case is limited to covering only what is necessary to explain our decision to the parties. We exercise de novo review. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006). We will affirm.

Duprey generally asserts that he was not involved in a conspiracy to dispense and distribute controlled substances outside of the usual course of professional practice, and not for a legitimate medical purpose. He contends that the evidence offered at trial was not sufficient for a number of reasons. Duprey says that the Government's case against him is circumstantial. He points out that none of the patients associated with him were called to testify. He also challenges that there is no evidence distinguishing him, or any of the patients with whom he is associated, from legitimate patients. Finally, he complains that the judgment relied heavily on the testimony of an expert who provided only "pattern evidence."

As Duprey concedes, the jury did not need direct evidence in order to convict him. The testimony of Efrain Rivera exposed how Duprey's operation worked. Rivera says Duprey paid him to drive pseudo-patients to Dr. Werther's office each week. Duprey gave Rivera money to cover the cost of office visits, and directed him to take the pseudo-patients to a pharmacist, who was a co-conspirator, to fill the prescriptions for prescription pain pills they received from Dr. Werther. Rivera testified that Duprey would collect the pills afterward and give each of the pseudo-patients money. He also

2

said that he personally witnessed Duprey selling the pills and admitted that, after a period of time, he became a pseudo-patient himself. Duprey paid him to pretend he had an injury to get a prescription from Dr. Werther.

Moreover, a police officer testified to overhearing Duprey threaten to expose Werther's "pill factory" operation. Another witness testified to buying pills from Duprey. Finally, although Duprey wishes to paint himself as a legitimate patient of Dr. Werther who responsibly asked to reduce the dosage of his pain pills over time, the record shows that he received lower dose pills in greater quantities. All of this— combined with evidence showing the large number of patients Duprey brought to Werther, the frequency of their visits, and the uniformity of the prescriptions these people received—was sufficient evidence for the jury to convict Duprey for his involvement in the conspiracy.

In addition to all of this evidence, an expert testified comparing the "pattern evidence" of typical conspiracies to this operation. This testimony was undoubtedly relevant, but we conclude that the jury had sufficient evidence to convict Duprey without it. Therefore, Duprey's reference to *United States v. Tran Trong Cuong*, 18 F.3d 1132 (4th Cir. 1994) is inopposite. The District Court did not err.

Duprey next argues that the District Court made a number of mistakes when it calculated his sentence. He complains that the District Court "failed to appreciate its authority" to reject the Sentencing Guidelines conversion ratio applying to oxycodone. Duprey says that the District Court did not realize it had the authority to reject the conversion ratio based upon the underlying policy concerns, and committed procedural

3

error by treating the Guidelines as mandatory. This misrepresents the District Court's handling of this discussion.

The District Court explicitly recognized the advisory nature of the Guidelines and acknowledged that the advisory range was well above the maximum sentence of 20 years: "so [Duprey] has to be sentenced below the Guidelines range no matter how you slice it." J.A. 156. The District Court rejected an invitation to investigate the policy foundations of the conversion ratio, saying: "I am troubled by the conversion rate because I have no basis for where they come up with that kind of number . . . .We don't know why they came up with that. But it isn't for me to make the change." J.A. 144-45. We understand the District Court's words as expressing a choice to decline Duprey's request to examine the underlying policy, rather than an inability to consider it. It did not commit any procedural error here, nor did it abuse its discretion.

Duprey also argues that he was sentenced based upon a quantity of oxycodone that was unsupported by evidence. However, our review of the record leads us to conclude that the District Court's determinations were sound. The amount of pills was ascertained by counting the actual prescriptions given to Duprey's psuedo patients. Their connection to Duprey was verified by multiple sources, from cooperating witnesses to pharmacy orders and appointment scheduling books. Moreover, the District Court counted only those prescriptions that were actually filled at pharmacies of co-conspirators. It did not err.

Duprey contends that transactions not included on the indictment were included in his sentencing calculations. Although we are dubious about this assertion, even if

4

accepted as accurate it would not constitute error. *See United States v. Baird,* 109 F.3d 856 (3d Cir. 1997). He also claims that the pill count included legitimate prescriptions, particularly those given to him. Duprey's argument requires us to accept the premise that the District Court wrongly categorized him, and others connected to him, as a pseudo-patient. The record supports the District Court's determination.

Finally, Duprey asserts that he was incorrectly categorized as an organizer or leader in the conspiracy, resulting in an unwarranted four-level upward adjustment. US.S.G. §3B1.1. Duprey contends that the District Court erred by failing to specify the individuals who were counted to determine his aggravating role. He also reduces his role to merely buying and selling the controlled substance. These claims are refuted by the record. The District Court concluded that the pseudo patients Duprey directed and paid to go to Dr. Werther were under his direction and supervision. When this group is added to Duprey's drivers, the record amply supports the District Court's conclusion that he organized or led five or more persons, as required by the Guidelines. *Id.*

For all of these reasons, we will affirm the judgment of conviction and sentence of the District Court.